In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–98 No. 45.

John S. OUTCELT, Petitioner,

v.

Douglas BRUCE and Jeffrey Wright, Respondents,

and

Victoria Buckley, Rebecca Lennahan and Richard Westfall, Title Board.

In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–98 No. 46.

John S. OUTCELT, Petitioner,

v.

Douglas BRUCE and Jeffrey Wright, Respondents,

and

Victoria Buckley, Rebecca Lennahan and Richard Westfall, Title Board.

In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–98 No. 52.

John S. OUTCELT, Petitioner,

v.

Douglas BRUCE and Jeffrey Wright, Respondents,

and

Victoria BUCKLEY, Rebecca Lennahan and Richard Westfall, Title Board.

In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–98 No. 53.

John S. OUTCELT, Petitioner,

v.

Douglas BRUCE and Jeffrey Wright, Respondents,

and

Victoria Buckley, Rebecca Lennahan and Richard Westfall, Title Board.

Nos. 98SA44, 98SA45, 98SA46, 98SA47.

Supreme Court of Colorado,
En Banc.

May 26, 1998.

Susan E. Burch, Denver, for Petitioners.

Douglas Bruce, pro se., Jeffrey Wright, pro se., Colorado Springs, for Respondents.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for Title Board.

Justice HOBBS delivered the Opinion of the Court.

Petitioner, John S. Outcelt (Outcelt), brought these original proceedings under section 1–40–107(2), 1 C.R.S. (1997). Outcelt seeks review of the Title Board's (Board) January 21, 1998, action in fixing the titles,

ballot titles and submission clauses, and summaries (titles and summaries) for four ballot initiatives for the 1998 election (the initiatives). The four proceedings were consolidated for review in this court. Outcelt objects to all four initiatives on the grounds that each (1) contains more than one subject, (2) fails to conform with subsection (3)(c) of section 20 of article X of the Colorado Constitution, (3) fails to express the true intent and meaning of the proposal, (4) contains a prejudicial catch phrase, and (5) is misleading and fails to reflect the true fiscal impact of the proposal. We hold that our recent opinion in *In re Ballot Title 1997–98 # 30*, 959 P.2d 822 (1998) (as modified April 13, 1998), controls this case and that each initiative unlawfully contains more than one subject matter in violation of the Colorado Constitution. Accordingly, we reverse the Board's actions.

## I.

Each of the initiatives at issue in this appeal proposes to add a new paragraph (d) to subsection (8) of section 20 of article X of the Colorado Constitution, commonly known as Amendment 1. Under Initiative # 53, the new paragraph would read as follows:

(8)(d) A $25 tax cut, increased $25 the next year and then $50 yearly (to $100, $150 ... ), shall lower each tax bill for each 1999 and later district: utility customer tax and franchise charge; vehicle ownership tax; yearly income tax; property tax spent on human and health services, district attorney and assessor offices, libraries, courts, schools, economic development, enterprises, and authorities combined; property tax equal to yearly payments for lease-purchases and school debt; remaining business personal property tax; property tax equal to yearly tax amounts from property or *other tax rates that are increased after November 3, 1992, except for fixed maximum tax rates with a fixed maximum number of dollars that are voter-approved since 1992, stated in the ballot title, and subject to increase by later voter approval only; and property tax equal to yearly amounts from exceeding either local spending limit percentage, computed since 1992, except for a fixed maximum number of dollars as described above.*

1. The titles and summaries are attached to this

The state shall replace affected local revenue monthly within all tax and spending limits, and audit each limit yearly; legal fees and costs shall mandatorily be awarded to successful plaintiffs only; and once a year, the general assembly may delay for one year all or part of the next year's increase in one or more tax cuts, but only if further tax cut or replacement amounts in that next year will leave total remaining state revenue from all sources growing less than $200 million.[1]

(Emphasis added.) Under Initiative # 45, the word "jails" would be added to the list of property tax cuts. Under Initiative # 46, the paragraph would include "jails" under the property tax cuts but "franchise charge" would be deleted from the language. Finally, under Initiative # 52, neither "jails" nor "franchise charge" would be included in the paragraph's language. The language of Initiative # 53, quoted above, is identical to the language of Initiative # 30, reviewed by this court in *Ballot Title 1997–98 # 30*, 959 P.2d 822.

Thus, like Initiative # 30, the initiatives now before us propose to institute a gradually increasing state and local tax cut. The tax cuts will affect funding for a variety of local services including libraries, courts, schools, and others. Like Initiative # 30, these initiatives also propose to "add new criteria to Amendment 1 providing that voter-approved revenue and spending increases enacted since 1992 are to specify a maximum tax rate with a fixed maximum number of dollars in the ballot title of those measures." *Ballot Title 1997–98 # 30*, 959 P.2d at 826.

The Board fixed the titles and summary on January 21, 1998. On February 9, 1998, the Board heard and denied Outcelt's motions for rehearing. Outcelt then sought review under section 1–40–107(2), 1 C.R.S. (1997), and the cases were consolidated for purposes of decision by this court.

## II.

We hold that the initiatives presented by these four cases violate the single subject requirement of the Colorado Constitution;

opinion as Appendices A–D.

thus, the Board should not have fixed the titles and summaries.

In *Ballot Title 1997–98 # 30*, we held that in addition to instituting a tax cut, Initiative # 30 proposed to amend Amendment 1, adopted by the voters in 1992, to "subject voter-approved local revenue and spending increases enacted since 1992 to a new Amendment 1 requirement—that a fixed tax rate/maximum dollar amount must be stated in the ballot title of those measures." 959 P.2d at 826. The initiatives presented here do not differ from Initiative # 30 in this regard.

In addition, as with Initiative # 30, both the Office of State Planning and Budgeting and the Department of Local Affairs here note the large number of election outcomes since 1992 which this provision potentially affects.[2] As we said in *Ballot Title 1997–98 # 30*, it is the "prerogative of the electorate" to approve tax and spending increases by the government and there has existed an expectation since Amendment 1 was passed that such voter approval would receive deference. *Ballot Title 1997–98 # 30*, 959 P.2d at 827 (citing *Havens v. Board of County Comm'rs*, 924 P.2d 517, 522 (Colo.1996)).

Accordingly, we hold that *Ballot Title 1997–98 # 30* controls this case such that the initiatives in the case now before us violate the single subject requirement of the Colorado Constitution. In addition to imposing tax cuts, the initiatives contain the additional subject of imposing "new criteria for voter approval of revenue and spending increases under Amendment 1." *Ballot Title 1997–98 # 30*, 959 P.2d at 827. Consequently, the Board should not have fixed the titles and summaries for any of the initiatives.

Because *Ballot Title 1997–98 # 30* controls this case and the initiatives violate the single subject requirement of our state constitution, we do not address other issues Outcelt raises in objection to the proposed initiatives.

## III.

Accordingly, because the initiatives contain more than one subject, the Board should not have fixed the titles and summaries. We reverse the Board's actions and return these matters to the Board with directions to strike the titles and summaries and return the initiatives to the proponents.

### Appendix A.

Proposed Initiative Number 1997–98 # 45

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT BY $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO

---

**2.** The language of the impact statements submitted by the Office of State Planning and Budgeting and by the Department of Local Affairs for the measures before us today, are almost identical to the impact statements submitted for Initiative # 30. For example, impact statements for the current initiatives and for Initiative # 30 note that the result of the provision requiring fixed tax rates and dollar amounts in past elections would be to curtail certain revenues and expenditures that have directly resulted from such voter-approved measures. State replacement of the revenue lost by means of the measure's tax cuts might not be forthcoming because the replacement revenue would not be "within all tax and spending limits."

LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT BY $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $25 tax cut, increased by $25 the next year and $50 each year thereafter, would lower each state and local tax bill for each utility customer tax and franchise charge; vehicle ownership tax; yearly income tax; property tax spent on human and health services, district attorney and assessor offices, libraries, jails, courts, schools, economic development, enterprises, and authorities combined; property tax equal to annual payments for lease-purchases and school debt; remaining business personal property tax; property tax equal to yearly amounts from tax rates increased after November 3, 1992, unless voter-approved since 1992, stated in the ballot title as a fixed maximum tax rate with a fixed maximum number of dollars, and subject to increase by later voter approval only; and property tax equal to yearly amounts exceeding either local spending limit percentage computed since 1992, unless voter-approved since 1992, stated in the ballot title as a fixed maximum number of dollars, and subject to increase by later voter approval only. The initial tax cut of $25 is applied to tax bills for tax year 1999.

The state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each limit yearly. Legal fees and costs are awarded mandatorily to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if further increase in the tax cuts or replacement revenues will result in total remaining state revenue in that next year from all sources growing less than $200 million.

*State impacts.* The state income tax cut would reduce the growth in state general fund revenue by $224,557,634 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility customer tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The cost to the state of replacing local government revenue losses during the three-year period beginning with fiscal year 1998–99 would be as follows:

- Vehicle ownership taxes—$346,990,568
- Property tax for specific services—at least $455,250,000
- Business personal property tax—$42,-750,000.

The state would also incur costs to replace local government revenue losses for utility customer-taxes, franchise charges, and property taxes, but the amount of these additional costs is indeterminate. The state would incur costs of at least $1,077,545 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $1,070,625,747 during the three-year period beginning with fiscal year 1998–99. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure.

*Local impacts.* This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible audit costs, legal fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned: January 21, 1998, 4:00 p.m.

February 4, 1998 Rehearing

• John S. Outcelt motion denied

Adjourned 3:05 P.M.

### Appendix B

Proposed Initiative Number 1997–98 # 46

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT BY $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT BY $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $25 tax cut, increased by $25 the next year and $50 each year thereafter, would lower each state and local tax bill for each utility customer tax; vehicle ownership tax; yearly income tax; property tax spent on human and health services, district attorney and assessor offices, libraries, jails, courts, schools, economic development, enterprises, and authorities combined; property tax equal to annual payments for lease-purchases and school debt; remaining business personal property tax; property tax equal to yearly amounts from tax rates increased after November 3, 1992, unless voter-approved since 1992, stated in the ballot title as a fixed maximum tax rate with a fixed maximum number of dollars, and subject to increase by later voter approval only; and property tax equal to yearly amounts exceeding either local spending limit percentage computed since 1992, unless voter-approved since 1992, stated in the ballot

title as a fixed maximum number of dollars, and subject to increase by later voter approval only. The initial tax cut of $25 is applied to tax bills for tax year 1999.

The state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each limit yearly. Legal fees and costs are awarded mandatorily to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if further increase in the tax cuts or replacement revenues will result in total remaining state revenue in that next year from all sources growing less than $200 million.

*State impacts.* The state income tax cut would reduce the growth in state general fund revenue by $224,557,634 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility customer tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The cost to the state of replacing local government revenue losses during the three-year period beginning with fiscal year 1998–99 would be as follows:

- Vehicle ownership taxes—$346,990,568
- Property tax for specific services—at least $455,250,000
- Business personal property tax—$42,-750,000.

The state would also incur costs to replace local government revenue losses for utility customer taxes and property taxes, but the amount of these additional costs is indeterminate. The state would incur costs of at least $1,077,545 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $1,070,625,747 during the three-year

period beginning with fiscal year 1998–99. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure.

*Local impacts.* This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible audit costs, legal fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned: January 21, 1998, 4:05 p.m.

February 4, 1998 Rehearing

- John S. Outcelt motion denied

Adjourned 3:05 P.M.

### Appendix C

Proposed Initiative Number 1997–98 # 52

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT BY $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAIN-

ING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH INCREASING THE TAX CUT BY $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $25 tax cut, increased by $25 the next year and $50 each year thereafter, would lower each state and local tax bill for each utility customer tax; vehicle ownership tax; yearly income tax; property tax spent on human and health services, district attorney and assessor offices, libraries, courts, schools, economic development enterprises, and authorities combined; property tax equal to annual payments for lease-purchases and school debt; remaining business personal property tax; property tax equal to yearly amounts from tax rates increased after November 3, 1992, unless voter-approved since 1992, stated in the ballot title as a fixed maximum tax rate with a fixed maximum number of dollars, and subject to increase by later voter approval only; and property tax equal to yearly amounts exceeding either local spending limit percentage computed since 1992, unless voter-approved since 1992, stated in the ballot title as a fixed maximum number of dollars, and subject to increase by later voter approval only. The initial tax cut of $25 is applied to tax bills for tax year 1999.

The state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each limit yearly. Legal fees and costs are awarded mandatorily to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if further increase in the tax cuts or replacement revenues will result in total remaining state revenue in that next year from all sources growing less than $200 million.

*State impacts.* The state income tax cut would reduce the growth in state general fund revenue by $224,557,634 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility customer tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The cost to the state of replacing local government revenue losses during the three-year period beginning with fiscal year 1998–99 would be as follows:

- Vehicle ownership taxes—$346,990,568
- Property tax for specific services—at least $455,250,000
- Business personal property tax—$42,750,000.

The state would also incur costs to replace local government revenue losses for utility customer taxes and property taxes, but the amount of these additional costs is indeterminate. The state would incur costs of at least $1,077,545 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $1,070,625,747 during the three-year period beginning with fiscal year 1998–99. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure.

*Local impacts.* This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible audit costs, legal fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned: January 21, 1998, 3:50 p.m.

February 4, 1998 Rehearing

• John S. Outcelt motion denied

Adjourned 3:05 P.M.

### Appendix D

Proposed Initiative Number 1997–98 # 53

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT BY $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT BY $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $25 tax cut, increased by $25 the next year and $50 each year thereafter, would lower each state and local tax bill for each utility customer tax and franchise charge; vehicle ownership tax; yearly income tax; property tax spent on human and health services, district attorney and assessor offices, libraries, courts, schools, economic development enterprises, and authorities combined; property tax equal to annual payments for lease-purchases and school debt; remaining business personal property tax; property tax equal to

yearly amounts from tax rates increased after November 3, 1992, unless voter-approved since 1992, stated in the ballot title as a fixed maximum tax rate with a fixed maximum number of dollars, and subject to increase by later voter approval only; and property tax equal to yearly amounts exceeding either local spending limit percentage computed since 1992, unless voter-approved since 1992, stated in the ballot title as a fixed maximum number of dollars, and subject to increase by later voter approval only. The initial tax cut of $25 is applied to tax bills for tax year 1999.

The state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each limit yearly. Legal fees and costs are awarded mandatorily to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if further increase in the tax cuts or replacement revenues will result in total remaining state revenue in that next year from all sources growing less than $200 million.

*State impacts.* The state income tax cut would reduce the growth in state general fund revenue by $224,557,634 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility customer tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The cost to the state of replacing local government revenue losses during the three-year period beginning with fiscal year 1998–99 would be as follows:

- Vehicle ownership taxes—$346,990,568
- Property tax for specific services—at least $455,250,000
- Business personal property tax—$42,750,000.

The state would also incur costs to replace local government revenue losses for utility customer taxes, franchise charges, and property taxes, but the amount of these additional costs is indeterminate. The state would in-cur costs of at least $1,077,545 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $1,070,625,747 during the three-year period beginning with fiscal year 1998–99. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure.

*Local impacts.* This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible audit costs, legal fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned: January 21, 1998, 3:40 p.m.

February 4, 1998 Rehearing

- John S. Outcelt motion denied

Adjourned 3:05 P.M.