In the Matter of the TITLE, BALLOT TITLE and SUBMISSION CLAUSE FOR 2009–2010 # 91.

Christopher Howes, Objector, Petitioner

v.

Richard G. Brown and Garald L. Barber, Proponents, Respondents

and

William A. Hobbs, Sharon Eubanks, and Geoff Blue, Title Board.

No. 10SA135.

Supreme Court of Colorado, En Banc.

June 28, 2010.

Scott E. Gessler, Mario D. Nicolais, II, Steven A. Klenda, Hackstaff Gessler LLC, Denver, Colorado, Attorneys for Petitioner.

Richard G. Brown, Pro Se Respondent.

Garald L. Barber, Pro Se Respondent.

No appearance by or on behalf of the Ballot Title Setting Board.

Justice HOBBS delivered the Opinion of the Court.

Christopher Howes, a registered elector of the State of Colorado, filed this original proceeding pursuant to section 1–40–107(2), C.R.S. (2009), to challenge the Title Board's action in setting the title, ballot title and submission clause, and summary for 2009–2010 Initiative # 91 ("Initiative # 91"). Under the stated broad purpose "to protect and preserve the waters of the state," Initiative # 91 proposes a constitutional amendment to article XVI, section 5 of the Colorado Constitution that would impose a tax on beverage containers, exempting containers that hold alcoholic beverages, dairy products, and medicines. The initiative would create a special fund into which the revenue generated by this tax would be placed, and it articulates that the fund shall be used as specified in the initiative.

Initiative # 91 directs eighty percent of the beverage container tax revenue to be distributed to Colorado's nine basin roundtables and the interbasin compact committee for use as specified in section (5) of the initiative. In addition, section (10) of the initiative would impose a prohibition on legislative actions by the General Assembly through the last day of December 2014, banning it from altering the statutes currently governing the basin roundtables and the interbasin compact committee, or from creating or empowering any another agency with authority to supersede or be superior to the basin roundtables or interbasin compact committee.

Among other arguments, Howes contends that Initiative # 91 contains multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution. We agree. We hold that Initiative # 91 contains at least two subjects: (1) creating and administering a beverage container tax, and (2) prohibiting the General Assembly from exercising its legislative authority over the basin roundtables and interbasin compact committee until the year

2015, while embedding these entities within the water sections of the Colorado Constitution and vesting them with significant new authority.

We therefore reverse the action of the Title Board and return this matter to the Board with directions to strike the title and return the initiative to the proponents. Because we determine that Initiative # 91 contains multiple subjects, we need not address Howes' remaining arguments that the title set by the Title Board is misleading and that the Title Board lacked jurisdiction because the proponents amended the initiative without complying with section 1–40–105(4), C.R.S. (2009). *See In re Title, Ballot Title & Submission Clause for Proposed Initiative 2001–02 # 43*, 46 P.3d 438, 440 (Colo.2002); *In re Title, Ballot Title & Submission Clause, and Summary for 1997–98 No. 45*, 960 P.2d 648, 650 (Colo.1998).

## I.

On April 19, 2010, the Title Board set the title, ballot title and submission clause, and summary for Initiative # 91. Howes filed a motion for rehearing pursuant to section 1–40–107(1), C.R.S. (2009), arguing that Initiative # 91 contained multiple subjects, that the title was misleading, and that the Title Board did not have jurisdiction to set a title because the proponents made substantial amendments to Initiative # 91 without highlighting the changes as required by section 1–40–105(4).

The Title Board granted Howes' motion in part, striking several terms in the title that it determined could be misleading.[1] However, the Title Board denied Howes' motion with respect to all of his other arguments, including that Initiative # 91 contained multiple subjects. Howes filed this original proceeding with us pursuant to section 1–40–107(2) to challenge the Title Board's decision, making the same arguments he made to the Board in his motion for rehearing.

Initiative # 91[2] begins by stating, "[i]n order for the waters of this state to be available to future generations of Colorado citizens for both consumptive and nonconsumptive uses, it is necessary and prudent to establish a means to protect and preserve the waters of the state." The initiative then declares that "[a] fee on containers that hold nonalcohol beverages for human consumption is rationally related to the protection and preservation of the waters of this state for future generations."

Accordingly, the initiative proposes a constitutional amendment to article XVI, section 5 of the Colorado Constitution imposing a tax on beverage containers in the amount of one cent for each six fluid ounces, up to a maximum of fifty cents on any single container. The initiative specifically exempts containers that hold alcoholic beverages, dairy products, and medicines, as well as containers filled with a fountain beverage that are intended for immediate consumption.

Initiative # 91 would create a special fund in the state treasury into which the estimated $110 million annual revenue generated from the beverage container tax would be deposited and instructs the State Treasurer how and when to distribute the funds. Section (5) of the initiative specifies that the bulk of the fund shall be available exclusively to the basin roundtables and the interbasin compact committee for:

(A) The protection, administration, and development of renewable surface waters and groundwater supplies for maximum utilization;

(B) The planning for and implementation of drought mitigation strategies;

(C) The development and implementation of measures designed to foster water conservation, the curtailment of wasteful uses of water, and the management of demand by water users;

1. The Title Board made two changes to the title in response to Howes' motion for rehearing: (1) it replaced the word "fee" with the word "tax," and (2) it struck the phrase "water for future generations" before the term "fund." The Title Board rejected Howes' arguments that Initiative # 91's title was otherwise misleading.

2. The full text of Initiative # 91 and the title and ballot title and submission clause set by the Title Board are attached as an Appendix to this opinion.

(D) Subject to the water laws of the state of Colorado, to maximize the efficient reuse of waters of this state;

(E) The full utilization of the water allocated to the state of Colorado in accordance with any interstate compact that the state of Colorado is party to;

(F) The development of practices to further the conjunctive uses of surface water and groundwater;

(G) The development of water storage, whether above ground or in the aquifers, to optimize the management of the water supplies of the state of Colorado;

(H) The improvement of water supply storage, treatment, and distribution systems to minimize water loss;

(I) The management and stewardship of the watersheds of the state of Colorado that are essential to the protection of the water supply that is generated by the watersheds including habitat for species of animals, birds and fish that are dependent upon the watersheds, erosion mitigation and control, and wildfire prevention; and

(J) Measures designed to improve the quality of the waters of the state of Colorado including meeting water quality mandates imposed by the state of Colorado or the United States.

Initiative # 91 specifies to whom the revenue will be distributed. Five percent of the beverage container tax revenue, up to six million dollars, is to be maintained as a reserve, and the state may borrow up to two-thirds of this reserve to defend against legal action pursuant to the Colorado River Compact.

After the reserve requirement is met, twenty percent of the remaining revenue is to be transferred to the general fund for appropriation to the Colorado Water Conservation Board and the State Engineer for specified uses, and to the State Treasurer and State Auditor for administrative costs connected with the fund.

The remaining eighty percent of the revenue is to be distributed to the nine basin roundtables and the interbasin compact committee, which were established by sections 37–75–101 to –107, C.R.S. (2009).[3]

Section (10) of the initiative places a four-year prohibition on legislative actions by the General Assembly, banning it from amending, repealing, or modifying sections 37–75–101 to –107—the statute governing the basin roundtables and the interbasin compact committee—as those sections existed on January 1, 2010, or from creating or empowering any other agency with authority to supersede or be superior to the basin roundtables or interbasin compact committee. Section (10) provides in full:

> There is hereby established a four-year moratorium on the amendment, repeal, or modification of article 75 of title 37, Colorado Revised Statutes, that created and governs the basin roundtables and the interbasin compact committee as article 75 of title 37 was incorporated in the laws of Colorado as of January 1, 2010. The purpose for the moratorium is to provide for the stability of the fund, the express uses of moneys in the fund, the accountability for the use of any moneys received from the fund and to provide adequate time for the basin roundtables and the interbasin compact committee *to complete the tasks that have been assigned to them under the provisions of article 75 of title 37, Colorado Revised Statutes and [Initiative # 91's] section (5). During the period of this moratorium, the General Assembly shall not create nor empower any other agency to supersede or be superordinate to the basin roundtables or the interbasin compact committee.* This moratorium is terminated and this subsection (10) is repealed on January 1, 2015.

(Emphasis added).[4]

Howes argues that Initiative # 91 contains more than one subject in violation of Colora-

---

**3.** The distribution to the basin roundtables and interbasin compact committee is limited to an initial distribution of five hundred thousand dollars each. Any remaining revenue after the initial distribution would be distributed to the basin

roundtables in proportion to their estimated share of the state's water supply shortage.

**4.** Initiative # 91 also contains several general provisions, including provisions relating to tax remittal procedures, a provision requiring that

do Constitution article V, section 1(5.5). Specifically, Howes argues that Initiative # 91 has three subjects: (1) creating a beverage container tax; (2) significantly transforming the role of the basin roundtables and the interbasin compact committee and prohibiting the General Assembly from altering that role for four years; and (3) creating borrowing authority in the General Assembly for the purpose of defending against legal actions under the Colorado River Compact.

The proponents disagree, contending that Initiative # 91 creates a comprehensive framework for collecting a beverage container tax and administering the revenue resulting from the tax to further the purposes of the initiative. The proponents assert that each of the provisions of the initiative are necessarily and properly connected to each other as required by Colorado's single-subject law. We disagree.

## II.

We hold that Initiative # 91 contains at least two subjects: (1) creating and administering a beverage container tax, and (2) prohibiting the General Assembly from exercising its legislative authority over the basin roundtables and interbasin compact committee until the year 2015, while embedding these entities within the water sections of the Colorado Constitution and vesting them with significant new authority.

### A. Standard of Review

■ When reviewing a challenge to the Title Board's setting of an initiative's title and ballot title and submission clause, we employ all legitimate presumptions in favor of the propriety of the Board's actions. *In re Title, Ballot Title, & Submission Clause for 2009–2010, # 24,* 218 P.3d 350, 353 (Colo. 2009). We do not determine the initiative's efficacy, construction, or future application, which is properly determined if and after the voters approve the proposal. *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 # 258(A) (English Language Educ. in Pub. Schs.),* 4 P.3d 1094, 1097–98 (Colo.2000). However, we must ex-

the fund be subject to an annual audit, and a

amine the proposal sufficiently to enable review of the Title Board's action. *In re Title, Ballot Title & Submission Clause, for 2007–2008, # 17 (New State Dep't & Elected Bd. for Envtl. Conservation),* 172 P.3d 871, 874 (Colo.2007). We apply general rules of statutory construction and accord the language of the initiative its plain meaning. *Id.*

### B. Single–Subject Requirement

■ Article V, section 1(5.5) of the Colorado Constitution requires that "[n]o measure shall be proposed by petition containing more than one subject." A proposed initiative that has two or more distinct and separate purposes which are not dependent upon or connected with each other violates this constitutional prohibition. *In re Title, Ballot Title & Submission Clause for 2009–2010 # 45,* 234 P.3d 642, 645–46 (Colo.2010).

■ An initiative may contain several purposes, but they must be interrelated to avoid violating the single-subject requirement. *In re Title & Ballot Title & Submission Clause for 2005–2006 # 55,* 138 P.3d 273, 278 (Colo.2006). A proponent's attempt to characterize an initiative under some general theme will not save the initiative from violating the single-subject rule if the initiative contains multiple subjects. *In re # 43,* 46 P.3d at 442 (citing *In re Proposed Initiative "Pub. Rights in Waters II,"* 898 P.2d 1076, 1080 (Colo.1995)); *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 No. 29,* 972 P.2d 257, 262 (Colo.1999). Accordingly, where an initiative advances separate and distinct purposes, "the fact that [both purposes] relate to a broad concept or subject is insufficient to satisfy the single subject requirement." *In re Title, Ballot Title & Submission Clause, & Summary for 1997–1998 # 64,* 960 P.2d 1192, 1196 (Colo. 1998). Implementing provisions directly tied to the initiative's central focus are not separate subjects. *In re # 258(A),* 4 P.3d at 1097.

■ An initiative proposing a comprehensive framework contains a single subject if all of its provisions relate directly to its single subject. *In re Title, Ballot Title & Submis-*

severability provision.

*sion Clause, & Summary for Proposed Petitions,* 907 P.2d 586, 590–91 (Colo.1995). However, when an initiative's provisions seek to achieve purposes that bear no necessary or proper connection to the initiative's subject, the initiative violates the constitutional rule against multiple subjects. *In re # 64,* 960 P.2d at 1196–97.

 The mere fact that a proposed constitutional amendment may affect the powers exercised by government under preexisting constitutional provisions does not by itself demonstrate that the proposal embraces more than one subject. *In re # 258(A),* 4 P.3d at 1097–98. However, when provisions seeking to accomplish one purpose are coupled with provisions proposing a change in governmental powers that bear no necessary or proper connection to the central purpose of the initiative, the initiative violates the single-subject rule. *See In re No. 29,* 972 P.2d at 262–65; *In re # 64,* 960 P.2d at 1197–1200.

The single-subject requirement has several purposes. First, it prevents the practice of putting together in one measure multiple subjects "for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits." *In re No. 29,* 972 P.2d at 261 (quoting § 1–40–106.5(1)(e)(I), C.R.S. (1998)); *see also In re 2009–2010 # 45,* 234 P.3d at 646 (stating that the single-subject rule seeks "to prevent proponents from joining incongruous subjects in the same measure, thereby ensuring that each proposal depends on its own merits for passage" (quoting *In re # 43,* 46 P.3d at 441)). Second, the rule protects against voter fraud and surprise caused by items concealed within a lengthy or complex proposal. *In re No. 29,* 972 P.2d at 261; *In re # 64,* 960 P.2d at 1196.

 In order to determine whether an initiative contains a single subject or multiple subjects, we must review the initiative as a whole rather than piecemeal and examine individual statements in light of their context. *In re # 24,* 218 P.3d at 353. While we cannot unduly limit the exercise of the initiative and referendum rights of the people of Colorado, we must not allow proposals containing multiple subjects to be submitted to the voters. *In re No. 29,* 972 P.2d at 261–62.

## C. Application to this Case

 We begin our analysis with the current provisions of article 75 of title 37, the statute governing the basin roundtables and the interbasin compact committee. The General Assembly created the nine basin roundtables in 2005 "[t]o facilitate continued discussions within and between basins on water management issues, and to encourage locally driven collaborative solutions to water supply challenges." Ch. 314, sec. 1, § 37–75–104(1)(a), 2005 Colo. Sess. Laws 1473–76. The basin roundtables are each tasked with developing a basin-wide water supply needs assessment and proposing methods for meeting those needs. § 37–75–104(2)(c).

In the same legislation, the General Assembly created the interbasin compact committee "[t]o facilitate the process of interbasin compact negotiations." Ch. 314, sec. 1, § 37–75–105(1)(a), 2005 Colo. Sess. Laws 1476–78. The interbasin compact committee is tasked with creating and implementing a negotiating framework and foundational principles to guide voluntary negotiations between basin roundtables, and with developing procedures for ratifying compacts and agreements between basin roundtables. § 37–75–105(3)(a)–(b). The interbasin compact committee is also directed to develop a public education, participation, and outreach working group. § 37–75–106.

While many of Initiative # 91's provisions relate to a beverage container tax and its administration, coiled in the folds of this initiative is a separate and distinct subject that would negate the power of the General Assembly to exercise legislative supervision over the basin roundtables and the interbasin compact committee, or create or empower any other agency to supersede or be superior to them, until the year 2015, while also embedding these entities into the water sections of the Colorado Constitution and vesting in them new authority over Colorado water matters.

Section (5) of the initiative would elevate the basin roundtables and the interbasin compact committee to constitutional status with significant new authority for:

(A) The protection, administration, and development of renewable surface waters and groundwater supplies for maximum utilization;

(B) The planning for and implementation of drought mitigation strategies;

(C) The development and implementation of measures designed to foster water conservation, the curtailment of wasteful uses of water, and the management of demand by water users;

(D) Subject to the water laws of the state of Colorado, to maximize the efficient reuse of waters of this state;

(E) The full utilization of the water allocated to the state of Colorado in accordance with any interstate compact that the state of Colorado is party to;

(F) The development of practices to further the conjunctive uses of surface water and groundwater;

(G) The development of water storage, whether above ground or in the aquifers, to optimize the management of the water supplies of the state of Colorado;

(H) The improvement of water supply storage, treatment, and distribution systems to minimize water loss;

(I) The management and stewardship of the watersheds of the state of Colorado that are essential to the protection of the water supply that is generated by the watersheds including habitat for species of animals, birds and fish that are dependent upon the watersheds, erosion mitigation and control, and wildfire prevention; and

(J) Measures designed to improve the quality of the waters of the state of Colorado including meeting water quality mandates imposed by the state of Colorado or the United States.

Such authority is not expressly given to the basin roundtables and interbasin compact committee under existing law. *See* §§ 37–75–101 to –107. Further, Initiative # 91 cements this newly-conferred express authority by prohibiting the General Assembly from making any changes to the statute governing the basin roundtables and interbasin compact committee before January 1, 2015.

But, the subject of prohibiting the General Assembly from exercising its legislative authority over the basin roundtables and the interbasin compact committee for a substantial period of time, while also vesting them with significant new authority, is not necessarily and properly connected with Initiative # 91's subject of establishing and administering a beverage container tax. This additional subject of Initiative # 91 is particularly significant because the initiative, if adopted, would funnel to the nine roundtables and the interbasin compact committee eighty percent of the beverage container tax revenue, while at the same time hamstringing the elected constitutional body designed under Colorado's republican form of government to provide a check on the exercise of agency authority.

In prior ballot title cases, we have reversed the Title Board's action in setting titles for initiatives affecting substantial rearrangement of existing governmental powers, just as Initiative # 91 proposes. For example, in *In re # 64*, we reviewed an initiative which proposed substantial changes to the judicial branch of state government. 960 P.2d at 1194. Initiative # 64 dealt generally with qualifications of judicial officers, but it included two provisions that we determined constituted subjects separate from the subject of judicial qualifications. *Id.* at 1198–1200. First, the initiative sought to divest the Judicial Discipline Commission—the governmental body charged with investigating and enforcing the Colorado Code of Judicial Conduct—of its regulatory and remedial powers. *Id.* at 1199. We held that Initiative # 64's proposed changes to the commission were a separate subject, because the power of the commission is derived from a separate and independent constitutional basis, from the judicial power vested in the courts. *Id.; see also In re No. 29*, 972 P.2d at 262 (discussing and applying *In re # 64*, 960 P.2d at 1199).

Second, Initiative # 64 also proposed to repeal the constitutional provision granting the City and County of Denver control over

the selection and appointment of Denver county court judges. *In re # 64*, 960 P.2d at 1198. We determined that the purpose of this part of the proposed initiative was to restrict Denver's constitutional powers, not to address the qualifications of becoming a judicial officer. *Id.* We held that, even though the constitutional provision

> indirectly affects the qualifications of Denver County court judges in the sense that it changes the governmental entity which controls these qualifications, its objective is to allocate authority over Denver county court judgeships to the City and County of Denver. [Initiative # 64's proposed] repeal of this provision therefore serves a similar purpose of reallocating governmental authority and control.

*Id.*

In *In re # 64*, we concluded that the purpose of Initiative # 64's provision modifying the authority of Denver over its county courts was distinct and separate from the purpose of the initiative's provisions concerning the qualifications of judicial officers. *Id.* Similar to Initiative # 64, Initiative # 91 proposes to divest the General Assembly of its legislative power over the basin roundtables and the interbasin compact committee for a prolonged period of time, in addition to establishing and administering a beverage container tax. These two subjects are not necessarily and properly connected.

Instead, this initiative sets up the kind of log rolling that the voters intended to prevent when adopting in 1994 the single-subject constitutional requirement. The prohibition against multiple subjects "discourages placing voters in the position of voting for some matter they do not support to enact that which they do support." *In re # 55*, 138 P.3d at 282. An elector going to the polls in the upcoming general election might favor a beverage container tax while being opposed to depriving the General Assembly of its legislative authority over the basin roundtables and the interbasin compact committee or vice versa.

The single-subject rule also serves to prevent voter surprise by prohibiting proponents from hiding effects in the body of a complex proposal. *In re No. 29*, 972 P.2d at 261. Voters confronted with this lengthy ballot initiative championing a beverage container tax might be surprised to learn that the initiative, if adopted, would deprive the legislators they elect from exercising any authority over the basin roundtables and the interbasin compact committee for a substantial period of time, at least equal to the four-year term of senators they elect. Discovery of this second purpose is revealed only through a close reading of the initiative and an appreciation of its complex text and how its sections interrelate. Such subterfuge is precisely what the constitutional prohibition against multiple subjects was designed to prevent. *See In re # 43*, 46 P.3d at 442.

We have rejected, because they contained multiple subjects, initiatives that proposed procedural changes to the initiative and referenda process, while also proposing substantive changes to constitutional provisions, such as changes to taxes and changes to the single-subject requirement itself. *Id.* at 444–48; *see also In re 1997–98 No. 45*, 960 P.2d at 649–50 (initiative unconstitutionally combined tax cut with new criteria for voter approval of revenue and spending increases); *In re Title, Ballot Title & Submission Clause, & Summary for 1997–98 # 30*, 959 P.2d 822, 826–27 (Colo.1998) (same); *In re Title, Ballot Title & Submission Clause, & Summary for Proposed Petition (Amend Tabor 25)*, 900 P.2d 121, 125–26 (Colo.1995) (initiative unconstitutionally combined tax cut with procedural changes for all future initiatives).

In *In re # 43*, Initiative # 43 proposed procedural changes to the initiative process and additionally sought to prohibit referenda that would reduce private property rights, including zoning referenda. 46 P.3d at 448. We determined that the zoning referenda provision would affect the referendum powers reserved to the registered electors of each municipality under article V, section 1(9) of the Colorado Constitution as to "all local, special, and municipal legislation of every character in or for their respective municipalities." *Id.* (quoting Colo. Const. art. V, § 1(9)). We concluded that the provision represented "a significant invasion of this fundamental constitutional right," which was

especially disturbing considering the "full right of self-government in both local and municipal matters afforded [home-rule cities] by article XX, section 6." *Id.* We held that the prohibition on referenda that would reduce private property rights was a separate subject from Initiative # 43's central focus of liberalizing the process by which initiatives are placed on the ballot. *Id.*

Initiative # 91 is similar to Initiative # 43 in that it combines a prohibition on the General Assembly's constitutional legislative powers afforded under article V of the Colorado Constitution with its central purpose of creating and administering a beverage container tax. The initiative's prohibition on actions by the General Assembly is especially troubling considering the oversight and authority the General Assembly traditionally has over agencies it has established—such as the basin roundtables and interbasin compact committee—and considering the new constitutional authority vested in the basin roundtables and the interbasin compact committee by Initiative # 91's section (5).

Under the single-subject requirement of the Colorado Constitution, the contents of an initiative must relate directly to the proposed initiative's single subject. *In re Proposed Petitions*, 907 P.2d at 590–91. Here, section (10) of this initiative tacks a deprivation of General Assembly authority onto a beverage container tax, while section (5) embeds the roundtables and the interbasin compact committee into the water sections of the Colorado Constitution and vests them with significant additional authority.

Initiative # 91's broad statement of purpose—"to protect and preserve the waters of this state"—does not properly unite these separate subjects into one. *See In re # 17*, 172 P.3d at 875–76; *In re # 43*, 46 P.3d at 442 (citing *In re Pub. Rights in Waters II*, 898 P.2d at 1080). In *In re # 17*, we held that the terms "environmental conservation" and "conservation stewardship" failed to unite into one the two separate subjects of creating a new environmental state department and implementing a public trust standard. 172 P.3d at 875–76. Similarly, the broad purpose "to protect and preserve the waters of this state" does not cure the multi-

ple subject violation of Initiative # 91. Contrary to the proponents' argument, there is no necessary and proper connection between the establishment and administration of a beverage container tax and a prolonged prohibition on the exercise of the General Assembly's authority over the basin roundtables and the interbasin compact committee.

Because we find that Initiative # 91 contains multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution, we do not address Howes' remaining arguments. *See In re # 43*, 46 P.3d at 440; *In re 1997–98 No. 45*, 960 P.2d at 650.

### III.

Accordingly, we reverse the Title Board's action in setting the title, ballot title and submission clause, and summary for Initiative # 91. We return this matter to the Title Board with directions to strike the title and return the initiative to its proponents.

### APPENDIX—Proposed Initiative # 91

Be it Enacted by the People of the state of Colorado:

Section 5 of article XVI of the constitution of the State of Colorado is amended to read:

**Section 5. Water of streams public property—water preservation and protection.**

(1) The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.

(2) THE PEOPLE OF THE STATE OF COLORADO FIND, DETERMINE, AND DECLARE THAT:

(A) IN ORDER FOR THE WATERS OF THIS STATE TO BE AVAILABLE TO FUTURE GENERATIONS OF COLORADO CITIZENS FOR BOTH CONSUMPTIVE AND NONCONSUMPTIVE USES, IT IS NECESSARY AND PRUDENT TO ESTABLISH A MEANS TO PROTECT AND PRESERVE THE WATERS OF THE STATE; AND

(B) A FEE ON CONTAINERS THAT HOLD NONALCOHOL BEVERAGES FOR HUMAN CONSUMPTION IS RATIONALLY RELATED TO THE PROTECTION AND PRESERVATION OF THE WATERS OF THIS STATE FOR FUTURE GENERATIONS.

(3) THE PEOPLE OF THE STATE OF COLORADO FURTHER FIND, DETERMINE, AND DECLARE THAT:

(A) FOR THE PURPOSES OF THE INITIAL IMPLEMENTATION OF THIS SECTION, THE BASIN ROUNDTABLES ESTABLISHED IN ACCORDANCE WITH ARTICLE 75 OF TITLE 37, COLORADO REVISED STATUTES, INCLUDE THE MOST COMPREHENSIVE REPRESENTATION OF CRITICAL INTERESTS NECESSARY TO DEVELOP AND IMPLEMENT SOUND PLANS AND PROGRAMS FOR THE PRESERVATION AND PROTECTION OF THE WATERS OF THIS STATE CURRENTLY IN EXISTENCE IN THIS STATE AND SHOULD BE TASKED WITH THE RESPONSIBILITY FOR CARRYING OUT THESE PURPOSES; AND

(B) IN ADDITION TO THE BROAD REPRESENTATION OF INTERESTS ON THE BASIN ROUNDTABLES, THE INTERBASIN COMPACT COMMITTEE IS PARTICULARLY WELL SUITED TO REVIEW AND ANALYZE PROPOSALS, INCLUDING THE TRANSFER OF WATER SUPPLIES BETWEEN THE RIVER BASINS, AND TO RECOMMEND THE OPTIMUM BALANCE OF WATER SUPPLY USES AMONG THE BENEFICIAL USES OF WATER RECOGNIZED BY THE STATE OF COLORADO FOR THE MAXIMUM BENEFIT OF THE PEOPLE OF COLORADO.

(4) THERE IS HEREBY CREATED A FUND IN THE STATE TREASURY TO BE KNOWN AS THE WATER FOR FUTURE GENERATIONS FUND WHICH IS REFERRED TO IN THIS SECTION AS THE "FUND." THE FUND SHALL BE ADMINISTERED BY THE STATE TREASURER WHO SHALL DISBURSE THE MONEYS FROM THE FUND AS REQUIRED BY THIS SECTION. NOTWITHSTANDING ANY OTHER PROVISION OF THIS CONSTITUTION OR STATUTE TO THE CONTRARY, THE MONEYS IN THE FUND, TOGETHER WITH ANY INTEREST OR OTHER EARNINGS ON SUCH MONEYS, ARE CONTINUOUSLY APPROPRIATED FOR THE PURPOSES ESTABLISHED IN THIS SECTION. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS SECTION, THE MONEYS IN THE FUND OR ACCRUING TO THE FUND SHALL NOT BE SUBJECT TO ANY FURTHER APPROPRIATION, BUDGETARY, OR FISCAL ACTION BY THE GENERAL ASSEMBLY. THE MONEYS DEPOSITED INTO THE FUND SHALL NOT, EXCEPT AS SPECIFICALLY AUTHORIZED BY THIS SECTION, BE APPROPRIATED, BORROWED, ATTACHED, OR USED FOR ANY PURPOSE OTHER THAN THOSE ESTABLISHED BY THIS SECTION. THE FUND SHALL CONSTITUTE A DISTINCT AND SEPARATE FUND AND THE MONEYS IN THE FUND SHALL NOT BE COMMINGLED WITH ANY OTHER MONEYS AND SHALL NOT BE CONSIDERED TO BE A PART OF THE GENERAL FUNDS OF THE STATE OF COLORADO. THE MONEYS IN THE FUND ARE PUBLIC FUNDS AND THE STATE TREASURER SHALL APPLY THE SAME INVESTMENT STANDARDS FOR SAFETY AND SECURITY AS ARE APPLICABLE TO OTHER STATE FUNDS.

(5) THE MONEYS DISBURSED FROM THE FUND SHALL BE USED FOR THE FOLLOWING PURPOSES:

(A) THE PROTECTION, ADMINISTRATION, AND DEVELOPMENT OF RENEWABLE SURFACE WATERS AND GROUNDWATER SUPPLIES FOR MAXIMUM UTILIZATION;

(B) THE PLANNING FOR AND IMPLEMENTATION OF DROUGHT MITIGATION STRATEGIES;

 

(C) THE DEVELOPMENT AND IMPLEMENTATION OF MEASURES DESIGNED TO FOSTER WATER CONSERVATION, THE CURTAILMENT OF WASTEFUL USES OF WATER, AND THE MANAGEMENT OF DEMAND BY WATER USERS;

(D) SUBJECT TO THE WATER LAWS OF THE STATE OF COLORADO, TO MAXIMIZE THE EFFICIENT REUSE OF THE WATERS OF THIS STATE;

(E) THE FULL UTILIZATION OF THE WATER ALLOCATED TO THE STATE OF COLORADO IN ACCORDANCE WITH ANY INTERSTATE COMPACT THAT THE STATE OF COLORADO IS PARTY TO;

(F) THE DEVELOPMENT OF PRACTICES TO FURTHER THE CONJUNCTIVE USES OF SURFACE WATER AND GROUNDWATER;

(G) THE DEVELOPMENT OF WATER STORAGE, WHETHER ABOVE GROUND OR IN THE AQUIFERS, TO OPTIMIZE THE MANAGEMENT OF THE WATER SUPPLIES OF THE STATE OF COLORADO;

(H) THE IMPROVEMENT OF WATER SUPPLY STORAGE, TREATMENT, AND DISTRIBUTION SYSTEMS TO MINIMIZE WATER LOSS;

(I) THE MANAGEMENT AND STEWARDSHIP OF THE WATERSHEDS OF THE STATE OF COLORADO THAT ARE ESSENTIAL TO THE PROTECTION OF THE WATER SUPPLY THAT IS GENERATED BY THE WATERSHEDS INCLUDING HABITAT FOR SPECIES OF ANIMALS, BIRDS AND FISH THAT ARE DEPENDENT UPON THE WATERSHEDS, EROSION MITIGATION AND CONTROL, AND WILDFIRE PREVENTION; AND

(J) MEASURES DESIGNED TO IMPROVE THE QUALITY OF THE WATERS OF THE STATE OF COLORADO INCLUDING MEETING WATER QUALITY MANDATES IMPOSED BY THE STATE OF COLORADO OR THE UNITED STATES.

(6) THE STATE TREASURER SHALL DISBURSE THE MONEYS IN THE FUND IN THE FOLLOWING MANNER:

(A) FIVE PERCENT OF THE MONEYS RECEIVED INTO THE FUND SHALL BE MAINTAINED AS A RESERVE UP TO A MAXIMUM AMOUNT OF SIX MILLION DOLLARS. IN THE EVENT THAT ANY OTHER STATE OR THE UNITED STATES FILES A LEGAL ACTION AGAINST THE STATE OF COLORADO PURSUANT TO THE TERMS OF THE COLORADO RIVER COMPACT, THE GENERAL ASSEMBLY MAY, ACTING BY BILL, BORROW UP TO TWO–THIRDS OF THE MONEYS IN THE RESERVE ACCOUNT TO DEFEND OR OTHERWISE PROVIDE LEGAL REPRESENTATION FOR THE STATE OF COLORADO. THE BILL ENACTED BY THE GENERAL ASSEMBLY TO BORROW FROM THE RESERVE ACCOUNT SHALL INCLUDE A REPAYMENT PLAN FOR THE REPLACEMENT OF ANY BORROWED AMOUNTS BUT THE GENERAL ASSEMBLY NEED NOT PAY ANY INTEREST ON THE MONEYS BORROWED.

(B) AFTER THE REQUIREMENT FOR THE AMOUNT TO BE SET ASIDE INTO THE RESERVE ACCOUNT, TWENTY PERCENT OF THE REMAINING MONEYS SHALL BE TRANSFERRED TO THE GENERAL FUND OF THE STATE OF COLORADO TO BE APPROPRIATED BY THE GENERAL ASSEMBLY AS FOLLOWS:

(I) FOR APPROPRIATION TO THE COLORADO WATER CONSERVATION BOARD, OR ANY SUCCESSOR AGENCY, SUCH AMOUNTS AS THE GENERAL ASSEMBLY DEEMS APPROPRIATE FOR THE ADMINISTRATION OF THE INTERSTATE COMPACTS AND EQUAL APPORTIONMENT DECREES FOR WATER TO WHICH THE STATE IS A PARTY; INVESTIGATING AND PREPARING CONTINGENCY PLANS FOR POTENTIAL ADVERSE EFFECTS ON THE STATE'S WATER SUPPLIES THAT MAY

OCCUR AS A RESULT OF SUSTAINED DROUGHTS OR OTHER PRECIPITATION DISRUPTIONS WHETHER SUCH DISRUPTIONS OCCUR AS PART OF NATURAL CLIMATE AND WEATHER PHENOMENA OR AS A RESULT OF CLIMATE CHANGE; INVESTIGATING AND PREPARING PLANS FOR THE REDUCTION OF WILDFIRE RISK THAT MIGHT ADVERSELY AFFECT THE WATERSHEDS FOR THE MAJOR SOURCES OF WATER SUPPLY; INVESTIGATING AND PREPARING PLANS FOR FLOODING THAT MIGHT ADVERSELY AFFECT THE WATER SUPPLIES OF THE STATE OF COLORADO; AND SUCH OTHER RESPONSIBILITIES AS MAY FROM TIME TO TIME BE REQUIRED BY THE GENERAL ASSEMBLY.

(II) FOR APPROPRIATION TO THE STATE ENGINEER OR ANY SUCCESSOR STATE OFFICIAL WITH THE SAME RESPONSIBILITY, AN AMOUNT DEEMED REASONABLY NECESSARY FOR THE PURPOSES OF ADMINISTERING THE WATER LAWS OF THE STATE OF COLORADO INCLUDING THE RIVER BASINS OF THE ARKANSAS RIVER, THE SOUTH PLATTE RIVER, THE COLORADO RIVER, THE BASIN COMPOSED OF THE GUNNISON, UNCOMPAHGRE AND SAN MIGUEL RIVERS, THE RIO GRANDE RIVER, THE BASIN COMPOSED OF THE YAMPA, WHITE, GREEN AND NORTH PLATTE RIVERS, AND THE BASIN COMPOSED OF THE SAN JUAN, RIO PIEDRA, RIO LAS ANIMAS, LOS PIÑOS, LA PLATA AND RIO MANCOS RIVERS.

[sic]

(IV) FOR APPROPRIATION TO THE STATE TREASURER AN AMOUNT DEEMED REASONABLY NECESSARY FOR THE PROPER ADMINISTRATION OF THE FUND.

(V) FOR APPROPRIATION TO THE STATE AUDITOR AN AMOUNT DEEMED REASONABLY NECESSARY FOR THE PROPER AUDIT OF THE FUND AND ANY REQUIRED AUDIT FUNCTIONS OF MONEYS DISTRIBUTED TO THE BASIN ROUNDTABLES AND THE INTERBASIN COMPACT COMMITTEE.

(VI) ANY MONEYS WHICH ARE NOT EXPENDED PURSUANT TO THE APPROPRIATION MADE BY THE GENERAL ASSEMBLY SHALL REVERT DIRECTLY TO THE FUND.

(VII) THE DISBURSEMENT AND TRANSFER OF THE MONEYS FROM THE FUND TO THE GENERAL FUND SHALL OCCUR NOT LATER THAN APRIL 1 OF EACH CALENDAR YEAR.

(VIII) THE MONEYS TO BE APPROPRIATED BY THE GENERAL ASSEMBLY AS REQUIRED BY THIS SUBSECTION (6) ARE TO BE USED FOR THE PURPOSES SPECIFIED IN THIS SUBSECTION (6) AND ARE NOT TO BE USED BY THE GENERAL ASSEMBLY TO SUPPLANT OR DISPLACE ANY OTHER FUNDS WHICH MAY BE APPROPRIATED, RECEIVED, OR DEDICATED FOR THE SAME PURPOSES.

(C) AFTER THE REQUIREMENT FOR THE AMOUNT TO BE SET ASIDE INTO THE RESERVE ACCOUNT, EIGHTY PERCENT OF THE REMAINING MONEYS SHALL BE DISTRIBUTED AND TRANSFERRED TO THE BASIN ROUNDTABLES AND THE INTERBASIN COMPACT COMMITTEE ESTABLISHED BY ARTICLE 75 OF TITLE 37, COLORADO REVISED STATUTES AS FOLLOWS:

(I) FOR EACH FISCAL YEAR COMMENCING JULY 1, 2011, JULY 1, 2012, AND JULY 1, 2013, AN EQUAL AMOUNT TO EACH OF THE BASIN ROUNDTABLES AND THE INTERBASIN COMPACT COMMITTEE FOR THE PURPOSES SPECIFIED IN ARTICLE 75 OF TITLE 37, COLORADO REVISED STATUTES, UP TO A MAXIMUM OF FIVE HUNDRED THOUSAND DOLLARS EACH FISCAL YEAR FOR EACH ROUNDTABLE AND THE COMMITTEE. THE DISBURSEMENT TO THE ROUNDTABLES AND THE INTERBA-

 

SIN COMPACT COMMITTEE SHALL OCCUR IN TWO INSTALLMENTS WITH THE FIRST OCCURRING ON JULY 1 OF EACH OF THE NOTED FISCAL YEARS AND THE SECOND ON DECEMBER 1 OF EACH OF THE NOTED FISCAL YEARS.

(II) AFTER THE DISBURSEMENT REQUIRED BY SUBPARAGRAPH (I) OF THIS PARAGRAPH (C) HAS BEEN MADE, ANY MONEYS REMAINING IN THE FUND SHALL BE DISTRIBUTED TO THE BASIN ROUNDTABLES IN PROPORTION TO THE ESTIMATED WATER SUPPLY SHORTAGE THAT EACH BASIN REPRESENTS OF THE STATEWIDE ESTIMATED WATER SHORTAGE AS DETERMINED BY THE MOST CURRENT WATER SUPPLY INITIATIVE STUDY, OR ANY SUCCESSOR STUDY FOR THE SAME OR SIMILAR PURPOSES, CONDUCTED BY THE COLORADO WATER CONSERVATION BOARD. THE MONEYS RECEIVED BY THE ROUNDTABLES SHALL BE USED ONLY FOR THE PURPOSES SPECIFIED IN SUBSECTION (5) OF THIS SECTION.

(7)(A) THERE IS IMPOSED UPON EVERY CONTAINER OF EVERY KIND THAT CONTAINS A NONALCOHOL BEVERAGE, WHICH BEVERAGE MEETS THE CRITERIA ESTABLISHED IN THIS SUBSECTION (7), A FEE OF ONE CENT FOR EACH SIX FLUID OUNCES, OR PART THEREOF, UP TO A MAXIMUM FEE OF FIFTY CENTS ON ANY SINGLE CONTAINER. FOR THE PURPOSES OF THIS SECTION, ONLY CONTAINERS THAT HOLD BEVERAGES THAT MEET THE FOLLOWING CRITERIA SHALL BE SUBJECT TO THE FEE IMPOSED BY THIS SUBSECTION (7):

(I) THE CONTAINER HOLDS A BEVERAGE THAT HAS NO ALCOHOL IN IT;

(II) THE CONTAINER HOLDS A BEVERAGE THAT IS INTENDED FOR CONSUMPTION BY HUMAN BEINGS;

(III) THE CONTAINER IS EITHER FULLY OR PARTIALLY FILLED WITH THE BEVERAGE AND IS SOLD OR DISTRIBUTED WITHIN THE STATE OF COLORADO OR THE CONTAINER WAS FILLED WITH THE BEVERAGE WITHIN THE STATE OF COLORADO BUT IS TO BE SHIPPED OUT OF THE STATE OF COLORADO; AND

(IV) THE CONTAINER IS EITHER SINGLE USE OR REFILLABLE AND EACH REFILLED USE CONSTITUTES A SEPARATE CONDITION TO WHICH THE FEE IS APPLICABLE.

(B) CONTAINERS HOLDING BEVERAGES WHICH MEET THE FOLLOWING CRITERIA ARE EXEMPT FROM THE FEE IMPOSED BY THIS SUBSECTION (7):

(I) CONTAINERS THAT ARE FILLED WITH DAIRY PRODUCTS;

(II) CONTAINERS THAT ARE FILLED OR PARTIALLY FILLED WITH MEDICINES WHETHER SOLD BY PRESCRIPTION OR OVER THE COUNTER;

(III) CONTAINERS THAT ARE FILLED OR PARTIALLY FILLED WITH A FOUNTAIN BEVERAGE AND ARE INTENDED FOR IMMEDIATE CONSUMPTION WHETHER ON OR OFF THE PREMISES WHERE THEY WERE ACQUIRED;

(IV) CONTAINERS WHICH ARE EMPTY AND ARE SHIPPED OUT OF THE STATE OF COLORADO WITHOUT ANY BEVERAGES IN THEM; OR

(V) CONTAINERS WHICH ARE REFILLED BY THE PURCHASING CONSUMER FOR HIS OR HER PERSONAL USE.

(C) THE GENERAL ASSEMBLY, ACTING BY BILL, MAY EXEMPT OTHER CONTAINERS HOLDING OTHER BEVERAGES FROM THE FEE IMPOSED BY THIS SUBSECTION (7) SUBJECT TO THE FOLLOWING CONDITIONS:

(I) THE BILL CONFERRING THE EXEMPTION SHALL BE SUBJECT TO THE REFERENDUM POWERS RESERVED

TO THE PEOPLE OF THE STATE OF COLORADO;

(II) THE BILL SHALL NOT CONFER A UNIQUE OR SPECIAL COMPETITIVE ADVANTAGE FOR THE BEVERAGE THAT IS HELD WITHIN THE CONTAINER VIS-À-VIS OTHER REASONABLY SUBSTITUTABLE BEVERAGES WHICH ARE HELD IN CONTAINERS SUBJECT TO THE FEE; AND

(III) THE BILL HAS BEEN ENACTED BY AT LEAST A TWO-THIRDS MAJORITY VOTE OF THE MEMBERS OF BOTH HOUSES OF THE GENERAL ASSEMBLY.

(D)(A) NEITHER THE STATE OF COLORADO NOR ANY POLITICAL SUBDIVISION OF THE STATE OF COLORADO NOR ANY AGENCY OF EITHER SHALL IMPOSE A FEE FOR ANY PURPOSE ON ANY CONTAINER THAT IS SUBJECT TO THE FEE ESTABLISHED BY THIS SUBSECTION (7).

(B) THE FEE ESTABLISHED BY THIS SUBSECTION (7) SHALL NOT SUPERSEDE NOR REPEAL ANY GENERAL OR SPECIAL SALES OR USE TAX IMPOSED BY THE STATE OF COLORADO OR ANY POLITICAL SUBDIVISION OF THE STATE OF COLORADO ON ANY CONTAINER OR ANY BEVERAGE THAT MEETS THE CRITERIA ESTABLISHED BY THIS SUBSECTION (7).

(8) THE FEES SHALL BE REMITTED TO THE STATE TREASURER TO BE DEPOSITED IN THE FUND AS FOLLOWS:

(A) IF THE CONTAINER, WHETHER FILLED IN THE STATE OF COLORADO OR ELSEWHERE, HOLDS A BEVERAGE THAT MEETS THE CRITERIA OF SUBSECTION (7) AND IS SOLD, DISTRIBUTED, OR PROVIDED ANYWHERE IN THE STATE OF COLORADO, THE PERSON SELLING, DISTRIBUTING, OR PROVIDING THE CONTAINER IS RESPONSIBLE FOR REMITTING THE FEE IMPOSED BY SUBSECTION (7) TO THE STATE TREASURER BY THE FIFTEENTH DAY OF EACH CALENDAR MONTH. THE PERSON REMITTING THE FEES MAY RETAIN THREE AND ONE-HALF PERCENT OF THE AGGREGATE FEES REMITTED.

(B) IF THE CONTAINER IS FILLED IN THE STATE OF COLORADO WITH A BEVERAGE THAT MEETS THE CRITERIA IN SUBSECTION (7) AND IS SHIPPED OUTSIDE THE STATE OF COLORADO, THE PERSON RESPONSIBLE FOR FILLING THE CONTAINER IS RESPONSIBLE FOR REMITTING THE FEE IMPOSED BY SUBSECTION (7) TO THE STATE TREASURER BY THE FIFTEENTH DAY OF EACH CALENDAR MONTH. THE PERSON REMITTING THE FEES MAY RETAIN THREE AND ONE-HALF PERCENT OF THE AGGREGATE FEES REMITTED.

(C)(I) IF THE CONTAINER HOLDS A BEVERAGE THAT MEETS THE CRITERIA OF SUBSECTION (7) AND IS SOLD OR DISTRIBUTED IN THE STATE OF COLORADO THROUGH WHAT IS COMMONLY KNOWN AS A VENDING MACHINE, THE VENDOR AT HIS OR HER DISCRETION, MAY, IN LIEU OF REMITTING THE FEES AS REQUIRED BY THIS SUBSECTION (8) PREPAY THE ESTIMATED AGGREGATE FEES THAT WOULD HAVE BEEN COLLECTED ON THE SALES OR DISTRIBUTION THROUGH THE VENDING MACHINE BUT SHALL MAKE A QUARTERLY ADJUSTMENT TO THE PREPAID FEES BASED ON THE ACTUAL SALES OR DISTRIBUTION THROUGH THE VENDING MACHINE. THE VENDOR MAY RETAIN THREE AND ONE-HALF PERCENT OF THE AGGREGATE FEES THAT WERE PREPAID.

(II) THE STATE TREASURER SHALL WITHIN SIX MONTHS OF THE EFFECTIVE DATE OF THIS SUBSECTION (8) ESTABLISH A PREPAYMENT OPTION PROGRAM FOR OPERATORS OF VENDING MACHINES TO USE AND MAY EXTEND PARTICIPATION IN THE PREPAYMENT OPTION PROGRAM TO OTHER PERSONS WHO ARE RE-

SPONSIBLE FOR THE REMITTING OF FEES WHEN SUCH PARTICIPATION IS JUSTIFIED FOR EFFICIENCY OR TO AVOID AN UNDUE HARDSHIP ON THE PERSON.

(D) THE PERSON WHO REMITS THE FEES AS REQUIRED BY THIS SUBSECTION (8) MAY RECOVER SUCH FEES THROUGH THE PURCHASE PRICE OF THE CONTAINER WHEN IT IS SOLD.

(E) THE PERSON WHO IS RESPONSIBLE FOR THE REMITTING OF FEES SHALL MAINTAIN ACCURATE RECORDS AND SHALL BE SUBJECT TO AUDIT AS SPECIFIED BY THE GENERAL ASSEMBLY. THE GENERAL ASSEMBLY MAY ESTABLISH PENALTIES FOR FAILURE BY A PERSON RESPONSIBLE FOR THE REMITTING OF THE FEES TO MAINTAIN ACCURATE RECORDS OR TO REMIT THE PROPER AMOUNT OF FEES IN A TIMELY MANNER.

(9) THE FUND SHALL BE SUBJECT TO AN ANNUAL AUDIT BY THE STATE AUDITOR OR ANY SUCCESSOR OFFICER OF THE STATE OF COLORADO WITH THE SAME RESPONSIBILITIES. THE LEGISLATIVE AUDIT COMMITTEE OF THE GENERAL ASSEMBLY, OR ITS SUCCESSOR COMMITTEE, SHALL OVERSEE THE ACTIVITIES OF THE STATE AUDITOR AND SHALL MAKE AN ANNUAL REPORT ON THE CONDITION OF THE FUND TOGETHER WITH SUCH OTHER FINANCIAL INFORMATION AS DEEMED APPROPRIATE BY THE COMMITTEE TO THE GENERAL ASSEMBLY. THE AUDIT REQUIRED BY THIS SUBSECTION (9) SHALL BE CONDUCTED AND THE REQUIRED REPORT MADE TO THE GENERAL ASSEMBLY NOT LATER THAN SIX MONTHS FOLLOWING THE END OF EACH STATE FISCAL YEAR. THE AUDIT REPORT SHALL BE MAINTAINED ON FILE BY THE STATE AUDITOR FOR SUCH PERIOD OF TIME AS SPECIFIED BY THE GENERAL ASSEMBLY, AND SHALL BE AVAILABLE FOR PUBLIC REVIEW AND INSPECTION FOLLOWING ITS FILING WITH THE GENERAL ASSEMBLY.

(10) THERE IS HEREBY ESTABLISHED A FOUR-YEAR MORATORIUM ON THE AMENDMENT, REPEAL, OR MODIFICATION OF ARTICLE 75 OF TITLE 37, COLORADO REVISED STATUTES, THAT CREATED AND GOVERNS THE BASIN ROUNDTABLES AND THE INTERBASIN COMPACT COMMITTEE AS ARTICLE 75 OF TITLE 37 WAS INCORPORATED IN THE LAWS OF COLORADO AS OF JANUARY 1, 2010. THE PURPOSE FOR THE MORATORIUM IS TO PROVIDE FOR THE STABILITY OF THE FUND, THE EXPRESS USES OF MONEYS IN THE FUND, THE ACCOUNTABILITY FOR THE USE OF ANY MONEYS RECEIVED FROM THE FUND AND TO PROVIDE ADEQUATE TIME FOR THE BASIN ROUNDTABLES AND THE INTERBASIN COMPACT COMMITTEE TO COMPLETE THE TASKS THAT HAVE BEEN ASSIGNED TO THEM UNDER THE PROVISIONS OF ARTICLE 75 OF TITLE 37, COLORADO REVISED STATUTES AND THIS SECTION (5). DURING THE PERIOD OF THIS MORATORIUM, THE GENERAL ASSEMBLY SHALL NOT CREATE NOR EMPOWER ANY OTHER AGENCY TO SUPERSEDE OR BE SUPERORDINATE TO THE BASIN ROUNDTABLES OR THE INTERBASIN COMPACT COMMITTEE. THIS MORATORIUM IS TERMINATED AND THIS SUBSECTION (10) IS REPEALED ON JANUARY 1, 2015.

(11) THIS SECTION SHALL BECOME EFFECTIVE UPON PROCLAMATION BY THE GOVERNOR AND SHALL BE SELF EXECUTING AND SELF IMPLEMENTING IN ALL RESPECTS.

(12) IF ANY PROVISION OF THIS SECTION IS HELD INVALID, SUCH INVALIDITY SHALL NOT AFFECT ANY OTHER PROVISIONS OF THIS SECTION THAT CAN BE GIVEN EFFECT WITHOUT THE INVALID PROVISION, AND TO THAT END THE PROVISIONS OF

THIS SECTION ARE DECLARED TO BE SEVERABLE.

*Ballot Title Setting Board*

Proposed Initiative 2009–2010 # 91 *

The title as designated and fixed by the Board is as follows:

State taxes shall be increased $110.0 million annually by an amendment to the Colorado constitution concerning the imposition of a tax on certain beverage containers to provide moneys for water conservation in Colorado, and, in connection therewith, setting the tax at one cent for every six fluid ounces, exempting from the tax certain fluids and beverages and authorizing the general assembly to create additional exceptions by a two-thirds majority of both houses, requiring the moneys from the tax to be used for purposes related to preserving the availability of water, and placing a four-year moratorium on modifications to state statutes regarding basin roundtables and the interbasin compact committee and its charter.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall state taxes be increased $110.0 million annually by an amendment to the Colorado constitution concerning the imposition of a tax on certain beverage containers to provide moneys for water conservation in Colorado, and, in connection therewith, setting the tax at one cent for every six fluid ounces, exempting from the tax certain fluids and beverages and authorizing the general assembly to create additional exceptions by a two-thirds majority of both houses, requiring the moneys from the tax to be used for purposes related to preserving the availability of water, and placing a four-year moratorium on modifications to state statutes regarding basin roundtables and the interbasin compact committee and its charter?

Hearing April 21, 2010:

Single subject approved; staff draft amended; titles set.

Hearing adjourned 9:34 a.m.

Hearing April 30, 2010:

Motion for Rehearing *granted in part* to the extent Board amended titles; *denied* in all other respects.

Hearing adjourned 4:29 p.m.

Justice COATS dissents.

Justice EID dissents, and Justice RICE joins in the dissent.

Justice COATS, dissenting.

Once more the majority resorts to the single-subject requirement to block consideration of a proposal to amend the state constitution by voter approval. I have written at length on a number of occasions about not only our lack of uniformity in applying the single-subject requirement but our willingness to, in fact, construe the term "subject" as being so elastic as to leave to this court the virtually unfettered discretion to either approve or disapprove any popularly initiated ballot measure at will. *See, e.g., In re Title & Ballot Title & Submission Clause for 2005–2006 # 55,* 138 P.3d 273, 283–85 (Colo. 2006) (Coats, J., dissenting); *In re Title, Ballot Title & Submission Clause for 2005–2006 # 74,* 136 P.3d 237, 243–44 (Colo.2006) (Coats, J., dissenting); *In re Title, Ballot Title & Submission Clause for 2003–2004 # 32 & # 33,* 76 P.3d 460, 471–72 (Colo.2003) (Coats, J., dissenting). Unlike those occasions, however, on which the majority offered some new and creative basis for parsing and subdividing the term "subject," here the majority offers no such explanation.

After dutifully reciting the requirement's dual concerns for secreting unrelated provisions and combining provisions too unpopular to succeed on their own, the majority simply identifies two clearly articulated provisions of the initiative and without offering any evidence that the inclusion of one or the other was intended, or likely, to deceive the voting public or that both were deliberately joined in a single initiative because neither would be

* Unofficially captioned "Container Fee to Fund Water Preservation and Protection" by legislative staff for tracking purposes. Such caption is not part of the titles set by the Board.

likely to succeed on its own, declares them separate subjects. Despite the fact that long and detailed initiatives, written at a level of abstraction more appropriate for legislation or even administrative regulation, admittedly lend themselves more easily to targeting for single-subject objection, the Title Board was able to fix a title reflecting the initiative's coherent subject of raising funds for maintaining the availability of the waters of the state and protecting from legislative interference the bodies designated to administer those funds. Subject only to judicial review for an abuse of its discretion, the Title Board is entrusted with the obligation to ensure that popularly initiated measures contain a single subject. *See* § 1–40–106.5(3), C.R.S. (2009).

In the past, I have also expressed my concern whether it is possible for judicial officers, however conscientious, to apply a standard as amorphous as the majority obviously considers the single-subject requirement to be without conforming it to their own policy preferences. I believe the experience of this jurisdiction bears out the validity of my concerns. In the absence of some indication of a deliberate intent to deceive the voting public by secreting unrelated provisions or to combine, for voting strength purposes, disparate provisions that have already failed or are likely to fail on their own, I will therefore not vote to overturn a determination of the Title Board on single-subject grounds.

Because I believe again today that the judgment of the court strips Colorado voters of a fundamental prerogative reserved to them by the state constitution, without protecting them in any meaningful way from either of the evils contemplated by the single-subject requirement, I would affirm the action of the Title Board. I therefore respectfully dissent.

Justice EID, dissenting.

I respectfully dissent from the majority's decision to strike down proposed Initiative # 91 on the ground that it contains multiple subjects. In my view, the proposed initiative's component parts relate to a single subject: a new tax to support water conservation programs.

As the majority sets forth, the proposed initiative 1) defines the scope of the new tax; 2) states that the revenue would be deposited in a special fund; 3) provides that the bulk of the fund would be made available to basin roundtables and the interbasin compact committee for various water conservation programs; and 4) places a four-year moratorium on the General Assembly's ability to amend the statute governing basin roundtables and the interbasin compact committee. Maj. op. at 1074–75. In sum, the initiative proposes a new tax and specifies *how* the new revenue is to be spent (on water conservation programs) and *who* is going to spend it (basin roundtables and the interbasin compact committee). In my view, the proposed initiative's components thus all relate to the single subject of a new tax to support water conservation programs.

The majority finds that the initiative's proposed four-year moratorium on the General Assembly's ability to amend the statute governing basin roundtables and the interbasin compact committee creates a second subject. Maj. op. at 1080. Yet it is difficult to see how the moratorium is not "dependent upon or connected with" the new tax. *In re Proposed Initiative "Pub. Rights in Waters II"*, 898 P.2d 1076, 1078–79 (Colo.1995) (defining the standard for finding components of a proposed initiative sufficiently related as to state a single subject). As explained by the text of the proposed initiative itself, the moratorium is designed to promote "the stability" of the special fund, to protect the "express uses of moneys in the fund," and "to complete the tasks" that have been assigned the roundtables and committee. Maj. op. at 1075 (citing section (10) of the initiative). The proponents thus are shielding from legislative change the very heart of the initiative—that is, the new tax and the provisions governing the expenditure of revenue it raises. While the majority finds the moratorium "especially troubling considering the oversight and authority the General Assembly traditionally has over agencies it has established," maj. op. at 1080, the merits of the proposed initiative are not before us.

For these reasons, I dissent from the majority's conclusion that Proposed Initiative # 91 contains multiple subjects.

I am authorized to state that Justice RICE joins in this dissent.